IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA WAITE,

    Plaintiff,

v.                                                       Civ. No. 1:22-cv-986-KG-KRS

EDURO HEALTHCARE, LLC, CABEZON
NURSING AND REHAB CENTER, LLC,
JOSEPH FOXWOOD, JOLENE GUTIERREZ,
JERA BAILEY, and CATE DYER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Eduro Healthcare, LLC, Cabazon Nursing and Rehab Center, LLC, Joseph Foxhood,[1] Jolene Gutierrez, Jera Bailey, and Cate Dyer's (collectively, "Defendants") Motion for Summary Judgment of Plaintiff's FMLA Interference (Count I) and Wrongful Termination (Count II) Claims, (Doc. 120), which is fully and timely briefed, (Docs. 127, 138). Having considered the briefing and applicable law, the Court grants the Motion.

I.    *Background*

This is an unlawful termination lawsuit related to the termination of Plaintiff Lisa Waite. Plaintiff originally filed her Complaint and Appeal from New Mexico Human Rights on November 2, 2022, in the Thirteenth Judicial District Court of the State of New Mexico. (Doc. 1-1). Defendants removed the case to this Court on December 29, 2022. (Doc. 1).

---

[1] The Court notes Plaintiff's Complaint names "Joseph Foxwood" as a Defendant. It appears, however, that Foxwood was a misspelling of Defendant's last name. *See e.g.,* (Doc. 120) (referring to Defendant Joseph Foxhood throughout); *see also* (Doc. 119-7) (Deposition of Jospeh Tobias Foxhood). The Court will therefore use Defendant's true last name: Foxhood.

The Complaint alleges five counts. Count I is a Family and Medical Leave Act (FMLA) interference claim under 29 U.S.C. § 2615(a)(1). (Doc. 1-1) at 7. Count II is an FMLA wrongful termination claim. *Id.* at 8. Counts III and IV are discriminatory discharge claims based on a serious medical condition and age, respectively, under the New Mexico Human Rights Act (NMHRA), NMSA 1978, § 28-1-7 (2020, amended 2024). *Id.* at 8–9. Lastly, Count V is a failure to accommodate claim under the NMHRA, § 28-1-7 (2020). *Id.* at 9. Defendants move for summary judgment on all claims against them, (Docs. 119–121), but the instant Motion relates to only Counts I and II.

II.   *Legal Standard*

Summary judgment is appropriate if the movant shows "there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine only "if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986).

The parties must support factual allegations with evidence, and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant must still produce real evidence. The nonmoving party cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01, 1214 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

III.    *Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[2]

Defendant Cabazon Nursing (Cabazon) does business as Suites Rio Vista (SRV) and is a skilled nursing facility owned by Defendant Eduro Healthcare, LLC (Eduro). (Doc. 120) at 2 (citing Doc. 119-1). From January 27, 2020, until approximately October 10, 2021, Plaintiff worked as the Director of Nursing (DON) at SRV. *Id.* (citing Docs. 119-2, 119-3). As the DON, Plaintiff was considered a key employee. *Id.* at 5. Plaintiff reported directly to the Site Administrator, which was Defendant Foxhood. *Id.* at 2 (citing Docs. 119-3, 119-4).

At various points throughout Plaintiff's tenure as DON, she experienced health issues. Relevant here, Plaintiff was suffering from a serious foot ailment. On June 16, 2021, Plaintiff's healthcare provider diagnosed her with Charcot's Foot on her right foot. *Id.* (citing Docs. 121-7, 121-8). Due to her diagnosis, Plaintiff's healthcare provider recommended that she have surgery on her right foot and remain non-weight bearing. *Id*. (citing Doc. 121-8). Plaintiff's healthcare

---

[2] Unless otherwise noted, the following facts are undisputed.

3

provider also noted that Plaintiff should not return to work and should instead work from home. *Id.* (citing Doc. 121-8). Around the same time as her diagnosis, Plaintiff approached Defendant Foxhood regarding her healthcare provider's instructions that she should not be weight bearing, and that she would need surgery. *Id.* at 3 (citing Doc. 120-1).

At this point, there are some discrepancies surrounding Plaintiff's request to take FMLA leave. Defendants argue Plaintiff did not request or approach Defendant Foxhood about taking FMLA leave, but Defendant Foxhood's Statement indicates otherwise. *Compare* (Doc. 120) at 3, ¶ 9 *with* (Doc. 126-17) at 3 (Statement of Joseph Foxhood stating "Ms. Waite requested FMLA leave on June 17, 2021"). Plaintiff, on the other hand, argues that she did request leave from Defendant Foxhood, but her deposition testimony indicates otherwise. *Compare* (Doc. 127) at ¶ 10 *with* (Doc. 120-1) at 3 (Deposition of Lisa Waite stating that she "wasn't [going to Defendant Foxhood] to talk about FMLA"). Although the Court notes this discrepancy, it need not resolve it because the Court's determination does not turn on this fact. What *is* undisputed is that Plaintiff wanted to preserve her FMLA leave for her surgery and related rehabilitation. *Compare* (Doc. 120) at 3, ¶ 10 *with* (Doc. 127) at 2, ¶ 9; (Docs. 120-1, 120-2).

Plaintiff apparently received what she wanted—at least initially. Sometime in June 2021, Plaintiff and Defendant Foxhood agreed that she could work from home temporarily. (Doc. 120) at 3 (citing Doc. 120-3). On June 30, 2021, Plaintiff provided a note from her medical provider indicating that she had to be non-weight bearing for two weeks and should remain on bed rest but could still work from home. *Id.* (citing Doc. 120-7). Shortly thereafter, on July 14, 2021, Defendant Bailey, Director of Clinical Operations, told Plaintiff that she had to take FMLA because she could no longer work from home. (Doc. 127) at 4 (citing Doc. 127-6).

4

Because of her medical issues and upcoming surgery, Defendant Eduro explained to Plaintiff that she was eligible for FMLA leave. (Doc. 120) at 4 (citing Docs. 120-10, 120-11). Human Resources Representative, Defendant Jolene Gutierrez, discussed FMLA leave as an option with Plaintiff due to the length of time Plaintiff expected she would need to be out of work. As part of the FMLA leave process, Plaintiff's healthcare provider completed and returned a Certification of Health Care Provider for Employee's Serious Health Condition Form (Certification). (Doc. 120) at 5 (citing Doc. 120-15). On the Certification, Plaintiff's healthcare provider indicated Plaintiff needed twelve weeks of continuous leave for a serious health condition beginning on July 19, 2021. *Id.* Plaintiff's healthcare provider also indicated Plaintiff was unable to perform essential functions of her job. *Id.* After the necessary paperwork was completed, Plaintiff was granted twelve weeks of FMLA leave. *Id.* at 4–5 (citing Docs. 120-12, 120-13, 120-15).

Plaintiff had foot surgery on September 15, 2021, and her FMLA leave was set to expire on or around October 8, 2021. *Id.* at 5–6 (citing Docs. 120-17, 127-1). Accordingly, on September 7, 2021, approximately a month before her leave was set to expire, Plaintiff requested more FMLA leave because her physician indicated that she would likely be unable to return to work until after January 1, 2022—indeed, Plaintiff did not recover until sometime in January or February of 2022. *Id.* (citing Docs. 121-15, 121-16, 121-25). Defendant Gutierrez responded to Plaintiff's request the next day, explaining that because Plaintiff's annual FMLA leave would be exhausted October 8, 2021, she had no additional FMLA leave available. *Id.* at 5 (citing Doc. 121-16). Knowing she would still need more time to recover from surgery, Plaintiff then requested personal leave until the end of January 2022. *Id.* at 6 (citing Doc. 121-19). Plaintiff's request for personal leave was denied. (Doc. 120) at 6; (Doc. 120-2). Plaintiff did not return to

work after exhausting her FMLA leave, as a result, Plaintiff was fired. *Id.* at 6–7 (citing Docs. 120-1, 120-24).

IV.   *Discussion*

"The FMLA guarantees the substantive rights of up to twelve weeks of unpaid leave for eligible employees of covered employers for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)). "Under the FMLA, an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].'" *Id.* (quoting § 2615(a)(1)). Both parties agree that to prevail on an FMLA interference claim, a plaintiff must demonstrate that: "(1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012). In addition to these elements, however, a plaintiff must also demonstrate that the employer's alleged FMLA interference prejudiced her. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, (2002) ("§ 2617 provides no relief unless the employee has been prejudiced by the violation.").

Defendants argue they are entitled to summary judgment on Plaintiff's FMLA claims—Counts I and II—arguing that Plaintiff fails to satisfy any of the three elements required to prevail. (Doc. 120) at 8–9. Moreover, to the extent that Plaintiff claims she was forced to take FMLA leave—and this forced leave resulted in her wrongful discharge—Defendants contend that such an involuntary leave claim is not recognized in the Tenth Circuit and is therefore inapplicable. *Id*. at 9–10. Defendants further argue that even if the Tenth Circuit recognized a

6

forced or involuntary FMLA claim, Plaintiff nonetheless fails to meet the required elements of such a claim. *Id.* at 10–13.

Plaintiff disagrees, maintaining her claims that Defendants interfered with her FMLA rights when (1) Defendant Foxhood discouraged her from taking FMLA leave in mid-June 2021; (2) Defendant Bailey forced her to take FMLA leave in mid-July 2021; and (3) Defendants terminated Plaintiff's employment—as a key employee—instead of restoring her to the same or equivalent position after she exhausted her FMLA leave. (Doc. 127) at 4, 8–11. The Court finds Plaintiff's arguments unavailing, addressing each in turn.

A. *Plaintiff's mid-June 2021 FMLA Interference Claim*

The Court first addresses Plaintiff's FMLA interference claim as it pertains to her allegation that Defendant Foxhood discouraged her from taking FMLA leave in mid-June 2021. Defendants argue that Plaintiff was not entitled to FMLA leave—the first element of an FMLA interference claim. (Doc. 120) at 8. Defendants concede that Plaintiff was *eligible* for FMLA leave in mid-June 2021 but assert Plaintiff was not *entitled* to FMLA leave because she failed to provide adequate notice. (Doc. 138) at 4. The Court finds Defendants' argument misplaced. Rather, this argument relates to the third element of an FMLA interference claim—i.e., whether Defendant Foxhood's actions were related to Plaintiff's exercise or attempted exercise of her FMLA rights. On this point, the Court agrees with Defendants that Plaintiff has not shown she attempted to exercise her FMLA rights in mid-June 2021.

Plaintiff claims she was "discouraged from taking FMLA leave by Foxhood's statements." (Doc. 127) at 9. Discouraging an employee from using FMLA leave could give rise to an FMLA violation. *Mardis v. Central Nat. Bank & Trust of Enid*, 1999 WL 218903, at *2 (10th Cir.). Here, however, Plaintiff's suggestion that she exercised or attempted to exercise her

7

FMLA rights in mid-June 2021, finds no support in the record. As far as this Court can tell, the only evidence Plaintiff puts forth supporting this claim is her deposition testimony. (Doc. 127) at 3–4, ¶¶ E–K. But Plaintiff's deposition testimony provides no such support and indeed, to this Court it appears contradictory. In her deposition, Plaintiff stated that she "wasn't [going to Defendant Foxhood] to talk about FMLA." (Doc. 120-1) at 3. Plaintiff also recalled that Defendant Foxhood "suggested that we do the intermittent remote leave," which Plaintiff understood to mean that she "wouldn't take the full FMLA at the time. That [they] would use [FMLA] as [they] needed." (Doc. 127-2). And, as Plaintiff admits, "[intermittent remote leave] sounded good to [her] because [employees] don't get much PTO, and [she] knew that probably there would be surgery in the future that [she] would need to save FMLA time for." (Doc. 127-3). Thus, Plaintiff fails to provide evidence that she attempted to exercise her FMLA rights in mid-June 2021.

      For much the same reason, the Court does not find that Defendant Foxhood initiated some adverse action that interfered with Plaintiff's ability to take FMLA leave in mid-June 2021. Plaintiff's proffered disputed material fact in support of her argument states only that Defendant Foxhood "suggested that she work from home." (Doc. 127) at 4, UMF I. Far from discouraging Plaintiff's use of her FMLA leave, it appears to this Court that Defendant Foxhood attempted to find ways of allowing Plaintiff to save her FMLA leave for a later date—something that Plaintiff readily admits she wanted. (Doc. 127-2, 127-3). Plaintiff provides no argument or explanation allowing this Court to reasonably infer that Defendant Foxhood's actions can be properly characterized as discouragement and interference. Moreover, even if the Court accepted that such a suggestion "interfered" with Plaintiff's ability to take FMLA leave, the Court does not find that such suggestion can be reasonably characterized as an adverse action—the second

8

element of an FMLA interference claim. This is especially true when Plaintiff admits she preferred not to take FMLA leave but instead hoped to save such leave for a later time.

Finally, even if Plaintiff was able to provide evidence satisfying the three elements of an FMLA interference claim, she has failed to demonstrate that such interference prejudiced her. To show prejudice under the FMLA, Plaintiff must establish that she "suffered a loss of income or incurred cots as a result of an alleged FMLA violation." *Gonzales v. New Mexico Dep't of Health*, 2024 WL 869153, at *5 (D.N.M.) (citing *Walker v. United Parcel Service, Inc.*, 240 F. 3d 1268, 1277 (10th Cir. 2001) (explaining that recovery under the FMLA is unambiguously limited to actual monetary losses). Without any evidence or suggestion of monetary losses based on Defendant Foxhood's suggestion that Plaintiff work from home in mid-June 2021, Plaintiff is unable to establish that she was prejudiced. For these reasons, the Court determines Plaintiff cannot maintain her FMLA interference claim as it relates to Defendant Foxhood's actions in mid-June 2021.

B. *Plaintiff's mid-July 2021 FMLA Interference Claim*

The Court next turns to Plaintiff's argument that Defendant Bailey forced her to take FMLA leave in mid-July 2021 and thereby interfered with her FMLA rights. At the outset, the Court notes that although a "forced leave" or "involuntary leave" FMLA claim has been recognized by the Sixth Circuit, the Tenth Circuit has not formally adopted such a claim. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007); *Jackson v. J.R. Simplot Co.*, 2016 WL 9108040, at *8 (D. Wyo.). Nonetheless, the Court determines that even if the Tenth Circuit were to recognize such a claim, Defendants would still be entitled to summary judgment on Plaintiff's involuntary leave claim.

9

Under Sixth Circuit case law, an employee may have an involuntary-leave FMLA interference claim when "an employer forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes her from working." *Wysong*, 503 F.3d at 449. But as both parties note, "the employee's claim ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." *Id.*; (Doc. 120) at 10; (Doc. 127) at 9.

Defendants make two arguments against Plaintiff's involuntary-leave claim. First, they argue Plaintiff's involuntary-leave claim fails because it is undisputed that she had a serious health condition, which precluded her from working. (Doc. 120) at 11. Defendants point to Plaintiff's Complaint, which states "Ms. Waite was entitled to 12 work weeks of leave because of a serious health condition that involves continuing medical treatment by a health-care provider and made plaintiff unable to perform the functions of her position." (Doc. 1-1) at 7. This is supported by the undisputed fact that Plaintiff's healthcare provider indicated she needed twelve weeks of FMLA leave for a serious health condition beginning on July 19, 2021, because she was unable to perform essential functions of her job. (Doc. 120) at 5 (citing (120-15) at 3–5). Thus, Defendants argue that Plaintiff cannot satisfy the first element of her involuntary-leave claim. The Court agrees.

Even if the Court were able to find that Defendants wrongfully forced Plaintiff to use her FMLA leave in the July-to-October timeframe, Plaintiff's involuntary-leave claim would still fail because she would have been unable to return to work in the September to December timeframe—the time she had hoped to take her FMLA leave. In *Hicks v. Leroy's Jewelers, Inc.*, the Sixth Circuit determined that the plaintiff's FMLA rights were not interfered with because the plaintiff would not have been able to return to work within twelve weeks even if she was

10

granted a later start date for her FMLA leave. 2000 WL 1033029, at *5 (6th Cir.). Similarly, in this case, even if Plaintiff's FMLA leave had started September 15, 2021—the date of her surgery—she would not have been able to return until sometime in January or February 2022, many weeks after exhausting her FMLA leave. Plaintiff's own testimony reveals as much, despite her current arguments to the contrary. *See* (Doc. 121-25) at 1 ("[Plaintiff] recovered from surgery…probably January or February"); *see also* (Doc. 121-19) at 2 (email from Plaintiff stating "the Surgeon has me out until January [3]1, 2022"); (Doc. 121-16) at 2 (email from Plaintiff explaining that her doctor indicated she would probably be out until after January 1, 2022.). Plaintiff proffers no evidence disputing these facts, but instead attempts to introduce uncertainty by suggesting that "Plaintiff may have been in a position to return in December 2021." (Doc. 127) at 9. Such speculative statements, however, are insufficient to create a genuine dispute of material fact. *See GeoMetWatch Corp.*, 38 F.4th at 1200–01, 1214 (10th Cir. 2022) ("[T]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). For these reasons, the Court concludes Plaintiff's FMLA involuntary-leave claim fails.

C. *Plaintiff's FMLA Wrongful Termination Claim*

The Court next addresses Plaintiff's remaining FMLA claim: that Defendants wrongfully terminated Plaintiff, as a key employee—and thereby interfered with her FMLA rights—when they did not restore her to the same or equivalent position after she exhausted her FMLA leave. (Doc. 127) at 10–11. Generally, employees who take FMLA leave "shall be entitled, on return from such leave…to be restored by the employer to the position of employment [or its equivalent]." 29 U.S.C. § 2614(a)(1)(A)–(B). There are, however, limited exceptions to the

11

general reinstatement requirement. One such exception exists for "key employees." 29 U.S.C. § 2614(b); 29 C.F.R. § 825.216(b). An employer may deny restoration to key employees if:

> (A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer;
>
> (B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the time the employer determines that such injury would occur; and
>
> (C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.

29 U.S.C. § 2614(b).

Plaintiff argues that because Defendants failed to notify Plaintiff that they did not intend to restore her to her previous position, they violated her FMLA rights. *Id.* at 10–11. Defendants contend the provisions related to key employees are inapplicable in this case because they never claimed that they could not restore Plaintiff to the same or similar position due to any economic injury they might suffer. (Doc. 120) at 13. For the reasons explained below, the Court agrees with Defendants.

Here, it is undisputed that Plaintiff was a key employee. (Doc. 120) at 5; (Doc. 127) at 2. But as mentioned above, Plaintiff was unable to return to work after exhausting her FMLA leave, and the FMLA "permits an employer to terminate an employee who cannot return to work after her twelve weeks of leave have expired." *McClelland v. CommunityCare HMO, Inc.*, 503 Fed. Appx. 655, 659 (10th Cir. 2012); *see also Kenney v. Bethany Home of Rhode Island*, 2011 WL 1770537, at *4 (D.R.I.) ("Regardless of [Plaintiff]'s 'key employee' status, her substantive right to job restoration did not materialize because she was unable to return to work."). As a result, Plaintiff was not entitled to job restoration, and her FMLA wrongful termination claim fails.

Finally, this case was removed to this Court because it raised a federal question under 28 U.S.C. § 1331. By granting Defendants' Motion for Summary Judgment of Plaintiff's FMLA Interference (Count I) and Wrongful Termination (Count II) Claims, (Doc. 120), the Court is dismissing all federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See Koch*, 660 F.3d at 1248 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998))). Consequently, the Court will remand this proceeding to state court for adjudication of the remaining state-law claims.

V.   *Conclusion*

For the reasons discussed, the Court grants Defendants' Motion for Summary Judgment of Plaintiff's FMLA Interference (Count I) and Wrongful Termination (Count II) Claims, (Doc. 120). Because the Court dismisses the federal claim, it remands Plaintiff's remaining state-law claims back to the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico.

IT IS SO ORDERED:

s/_____
KENNETH J. GONZALES[3]
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.